UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT C. STRYKER,

               Petitioner,

v.                                          Case No. 22-cv-1243-bhl

DANIEL CROMWELL, Warden,

               Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

      On December 15, 2016, a Waukesha County jury found Petitioner Robert C. Stryker guilty of first-degree sexual assault of a child. The trial judge later sentenced Stryker to eight years of initial confinement and eight years of extended supervision. Stryker challenged his conviction in state court postconviction proceedings and on direct appeal. After the state courts affirmed Stryker's conviction, he filed a petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254. (ECF No. 1.) Stryker has also filed a motion for an order permitting him to transfer to custody in Minnesota pending the Court's decision. (ECF No. 45.) Because Stryker has not established that he is entitled to habeas relief, his petition will be denied. The Court will also deny Stryker's motion to transfer custody as moot given that Stryker was released from incarceration to extended supervision on December 10, 2024.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

      In August 2015, Stryker was charged with one count of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(e). (ECF No. 31-3 at 2.) The original criminal complaint was based on the victim reporting to her adoptive mother that approximately one year earlier, when she was six years old, Stryker "put his hand in her pants and touched her private

---

[1] In deciding a habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." *Id.* The statement of background facts is as set forth by the Wisconsin Court of Appeals in its decision affirming Stryker's conviction. (ECF No. 31-3 at 2–4); *see also State v. Stryker*, No. 2020AP1482-CR, 2021 WL 6131502 (Wis. Ct. App. Dec. 29, 2021) (unpublished disposition).

area." (*Id.*) The victim informed her mother that the assault occurred while she was at Stryker's residence watching a movie with his children. (*Id.*) The victim's mother took her to the Waukesha police department, where she was interviewed by law enforcement. (*Id.*) The next day, a social worker conducted a forensic interview with the victim, who repeated her allegations. (*Id.*)

As relevant to his petition, Stryker filed two pretrial evidentiary motions. The first motion sought the Court's permission to admit three instances of "other-acts evidence" on the theory that the victim's mother "was, in the words of a child protective services (CPS) case worker, 'hyper vigilant regarding sexual abuse.'" (*Id.* at 3.) The three incidents were (1) the "bus driver incident," in which the victim's mother reported to CPS in January 2013 that her daughter had been sexually assaulted by a school bus driver; (2) the "neighborhood boy incident," in which the victim's mother "reported that a male juvenile had sexually assaulted a neighborhood child"; and (3) the "internet solicitation incident, in which the victim's mother reported to the police "that a man from Africa was engaging in the internet solicitation of one of her other children." (*Id.*) As noted by the Wisconsin Court of Appeals, the police did not pursue charges relating to any of the reported incidents and the bus driver allegation was affirmatively determined to be unsubstantiated. (*Id.*) Stryker's second pretrial motion sought "to admit at trial prior untruthful allegations of sexual assault" by the victim. (*Id.*) According to that motion, when the victim was interviewed regarding the bus driver incident, the victim "told a social worker that her brother had touched her private parts." (*Id.*) Authorities elected not to pursue that allegation after the victim's mother "declined to have police investigate that allegation and offered a nonsexual explanation" for the victim's statement. (*Id.*) The trial court denied both motions, concluding that "none of the proffered evidence was admissible." (*Id.*)

At the start of Stryker's trial, defense counsel raised an issue regarding a group sitting in the gallery behind the prosecutor's table. (*Id.* at 3-4.) The group was identified as a motorcycle club called "Guardians of the Children," who wore "sleeveless leather vests displaying a large circular emblem with the group name and logo, which includes a winged shield with an unbalanced scale." (*Id.*) The trial court noted that "any patches or emblems were not visible from the bench," and declined to "exclude members of the public or require anyone to change clothing at that time." (*Id.* at 4.) After the first day's lunch recess, defense counsel moved for a mistrial based on the group's presence and potential tainting of the trial. (*Id.*) According to counsel, "he had witnessed Guardians of the Children members escorting [the victim] through the cafeteria to the front of the

food line, in front of some jurors." (*Id.*) Counsel also represented that his research into the group revealed that they advocate for children and "serve in an intimidation role." (*Id.*) The prosecutor noted that he also saw the victim with Guardians of the Children members and, although he was "a little troubled" by the incident, argued that no mistrial was necessary because he escorted the victim away from them and advised her mother that the victim "should not be interacting with the group in the presence of the jury." (*Id.*) The trial court denied Stryker's motion for a mistrial but stated that it would remain "keenly aware and watchful of any problems or concerns." (*Id.*)

At trial, the victim testified to the claimed abuse. She indicated that she went over to Stryker's house, and while sitting on his lap in the living room, "[h]e put his hand down [her] pants" while they were watching Scooby-Doo. (ECF No. 31-8 at 188–89.) She testified that Stryker put his hand "[i]nside of the underwear" and that "[h]is hands w[ere] cold." (*Id.* at 189.) The victim testified that it happened "more than one time." (*Id.* at 191.) The victim also testified about the day she first reported the assault to her sister and her sister told her to "go tell mom." (*Id.* at 195.) The victim told her mother that Stryker "put his hands inside [her] pants" and her mother responded that "we should go and tell the police officer." (*Id.* at 195.) The victim then testified that she talked to two different officers, and she told them both that Stryker "put his hands inside [her] pants." (*Id.* at 196–97.) The jury also heard testimony from the victim's mother and sister, the officers who spoke with and interviewed the victim and her mother, and Stryker's ex-wife. (*Id.* at 211–75; 281–310; ECF No. 31-9 at 11–169.)

The jury found Stryker guilty of first-degree sexual assault of a child by sexual contact. (ECF No. 31-3 at 4.) Stryker subsequently filed a post-conviction motion, alleging that the trial court erroneously exercised its discretion when it denied his motion to admit evidence of the bus driver incident and when it denied his motion for a mistrial. (*Id.*) The postconviction court denied the motion. (*Id.*) Stryker relieved postconviction counsel of her representation and proceeded *pro se* in appealing the trial court's decision denying his postconviction motion. (*Id.* at 2 & n.1.)

The court of appeals affirmed Stryker's conviction. It first held that Stryker's postconviction counsel had conceded that evidence concerning the neighborhood boy incident was properly deemed inadmissible and, therefore, the court chose not to address the conceded argument. (*Id.* at 5–6.) The appellate court next concluded that the trial court had properly exercised its discretion in denying Stryker's motion to introduce evidence regarding both the bus driver incident and the victim's allegation that her brother had touched her private parts. (*Id.* at 6–

10.) Finally, the court ruled that Stryker had been provided a full opportunity to present his defense, despite being precluded from introducing the excluded evidence. (*Id.* at 10–11.)

The court of appeals also addressed Stryker's argument that the presence of the Guardians of the Children had deprived him of a fair trial. (*Id.* at 11–13.) The appellate court recognized "that 'the effect on a defendant's fair-trial rights of . . . spectator conduct . . . is an open question in [the United States Supreme Court's] jurisprudence,'" and then considered whether Stryker met his burden of demonstrating that "the attire and conduct of the spectators created an unacceptable risk of impermissible factors coming into play." (*Id.* at 12.) The court concluded Stryker had not met that burden. (*Id.* at 12–13.) The court of appeals affirmed Stryker's conviction on December 29, 2021. (*Id.* at 1.) Stryker petitioned the Wisconsin Supreme Court for review and the court denied his petition on May 18, 2022. (ECF No. 31-5.)

On October 20, 2022, Stryker filed a petition for writ of habeas corpus asserting three grounds for relief: (1) that he was denied effective assistance of appellate counsel; (2) that his right to a fair trial was violated by the Guardians of the Children spectators; and (3) that evidence of the three "prior untruthful allegations of child sexual assault" was unconstitutionally excluded. (ECF No. 1.) Stryker's petition was a "mixed petition" that included both exhausted and unexhausted claims, *see Rose v. Lundy*, 455 U.S. 509, 510 (1982), and he acknowledged that he had not exhausted his claim that he was denied the effective assistance of counsel on appeal. (ECF No. 1 at 7.) Accordingly, the Court gave Stryker two options: he could abandon his unexhausted claim and proceed with only those claims that were fully exhausted, or he could ask the Court to stay the case while he pursued his unexhausted claim in state court. (ECF No. 18 at 4.)

Instead of complying with the Court's Order, Stryker filed a Notice of Appeal, a motion for permission to proceed *in forma pauperis* and motion for leave to appeal without prepayment of the filing fee. (ECF Nos. 19, 24 & 25.) After this Court denied his motion to proceed *in forma pauperis* and certified that the appeal was taken in bad faith, (ECF No. 27 at 3), Stryker voluntarily dismissed the appeal and stated that he wished to proceed only on grounds two and three in his habeas petition. (ECF No. 29.) Based on Stryker's filing, the Court considered ground one (the ineffective assistance of appellate counsel claim) abandoned and ordered Respondent to respond to the petition. (ECF No. 30 at 2.)

Before filing his brief in support of his Petition, Stryker moved to enlarge the record, which Respondent opposed. (ECF Nos. 33 & 37.) On September 17, 2024, the Court denied the motion

because Stryker failed to explain why the documents included by Respondent were inadequate or must be supplemented for the Court to decide the merits of his motion. (ECF No. 47 at 2.) The parties then proceeded to brief the merits of Stryker's petition and that briefing is now completed. Based on the record presented, and for the reasons stated below, Stryker's petition will be denied.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. § 2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally very difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is contrary to clearly established Federal law within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or "decide[d] a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision unreasonably applies established precedent within the meaning of Section 2254(d)(2) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). It is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). As the Supreme Court has emphasized, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists

could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Stryker has exhausted and elected to proceed with just two grounds for relief. First, he argues that he is entitled to habeas relief because his right to a fair trial was violated by the presence of the motorcycle club. (ECF No. 38 at 15–21.) Stryker claims that the Wisconsin Court of Appeal's decision to the contrary relied upon the incorrect standard and is therefore not entitled to AEDPA deference. (*Id.* at 17–18.) Second, Stryker argues that he is entitled to habeas relief based on the trial court's decision to exclude evidence related to the bus driver incident, the neighborhood boy incident, and the statements from the victim about her brother. (*Id.* at 21–30.) Stryker claims his rights to confrontation and compulsory process were violated in connection with these rulings. (*Id.* at 21.) Because Stryker has not demonstrated that federal habeas relief is warranted, his petition will be denied.

**I.     Stryker Has Not Cited Any Supreme Court Precedent Establishing that the Spectator Conduct He Complains of Violated His Right to a Fair Trial.**

Stryker argues that the appellate court failed to correctly apply United States Supreme Court precedent in concluding that the conduct of trial spectators did not violate Stryker's constitutional right to a fair trial. (ECF No. 38 at 15–17.) A defendant has a constitutional right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 503 (1976.) The Supreme Court "has recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial" and has articulated a "test for inherent prejudice that applies to state conduct." *Carey v. Musladin*, 549 U.S. 70, 72, 76 (2006). The test asks "whether 'an unacceptable risk is presented of impermissible factors coming into play.'" *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (quoting *Williams*, 425 U.S. at 505). The test also asks whether "the [courtroom] practices furthered an essential *state* interest." *Musladin*, 549 U.S. at 76 (emphasis in original). The Supreme Court has limited such presumptively prejudicial practices to state sponsored practices and has "never applied that test to [private] spectators' conduct." *Id.* at 75–76. As the Court itself has emphasized, "[i]n contrast to state-sponsored courtroom practices," the effect of spectator conduct on fair-trial rights, "is an open question in [Supreme Court] jurisprudence." *Id.* at 76. Indeed, the Supreme Court "has never addressed a claim that . . . private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." *Id.* The Supreme Court

has further observed that the Fourth and Ninth Circuits (and state courts) have addressed the issue but are divided as to whether spectator displays can be inherently prejudicial. *Id.* at 76–77. In *Musladin*, the Supreme Court overturned a grant of habeas relief that had been based on members of the victim's family wearing buttons with the victim's picture on them in the spectator gallery during the trial. *Id.* at 72. "Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the Supreme Court stated, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Id.* at 77 (quoting 28 U.S.C. § 2254(d)(1)); *see also Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) (reversing grant of habeas relief where lawyer participated in a plea hearing by speakerphone because "[n]o decision of this Court . . . squarely addresses the issue in this case").

The Supreme Court has made clear that federal courts are not to find lightly that a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under AEDPA. For purposes of 28 U.S.C. § 2254(d)(1), "clearly established Federal law" "refers to the holdings, as opposed to the dicta," in Supreme Court decisions. *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (quoting *Taylor*, 529 U.S. at 412). Given the lack of guidance for the effect of spectators' conduct on a defendant's right to a fair trial, the Wisconsin Court of Appeals correctly recognized that there is no established rule and noted "even assuming that state-actor cases . . . are applicable, the question is whether the attire and conduct of the spectators created an unacceptable risk of impermissible factors coming into play." (ECF 31-3 at 12.) The court of appeals went on to determine the there was too little information for Stryker to meet this standard as it was unclear how many members of the jury were present at the time the victim was escorted by members of the group, what the jury observed before she was escorted to the prosecutor's office, and whether any of the group's patches or emblems were visible from where the jurors were standing or sitting in the courtroom. (*Id.*) The appellate court also noted that the trial court stated that any patches or emblems were not visible from the bench. (*Id.* at 4.)

Stryker argues that the court of appeals failed to decide the case under *Remmer v. United States*, 347 U.S. 227 (1954), which he contends is the controlling authority. (ECF No. 38 at 16–17.) Stryker's reliance on *Remmer* is misplaced because *Remmer* is not a spectator case. In *Remmer*, the defendant was charged with, and convicted of, willful evasion of federal income

taxes. 347 U.S. at 228. The defendant learned after trial that an unnamed person had communicated with a certain juror, who afterwards became the jury foreman, and remarked to him that he could profit by bringing a verdict favorable to the defendant. *Id.* The juror reported the incident to the judge, who informed the prosecution but not the defense. *Id.* The FBI then investigated and produced a report, which was considered only by the judge and the prosecutors and concluded that "the statement to the juror was made in jest." *Id.* After trial, the defendant moved for a new trial which was denied by the district court and affirmed on appeal. *Id.* at 228–29. The Supreme Court vacated the appellate decision and remanded back to the district court, holding that "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . presumptively prejudicial." *Id.* at 229. The Court stated, "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* In a subsequent decision, the Court noted the narrow scope of the issue: "the effect of . . . extraneous communications with the juror upon the petitioner's right to a fair trial." *Remmer v. United States*, 350 U.S. 377, 378 (1956).

Stryker contends that *Remmer* was the "appropriate precedent" because "[t]he motorcycle club's actions . . . were dramatically more aggressive" than in other spectator conduct cases like *Musladin*. (ECF No. 38 at 17.) Stryker, however, presents no evidence of anyone communicating with, contacting, or tampering with any jurors. Accordingly, *Remmer* is simply not applicable. The Wisconsin Court of Appeals' failure to consider *Remmer* in rejecting Stryker's fair trial claim was not improper.

Stryker also takes issue with the conduct of the Guardian of the Children in the courtroom and their presence with the victim during a lunch break in the cafeteria. He discusses the patches, insignias, and emblems on the members' jackets. (ECF No. 38 at 12–13.) These facts do not transform his case into one that is controlled by any existing Supreme Court precedent. Moreover, the trial judge stated he could not see the message on the jackets from the bench and there is no evidence that the jurors could see the patches, insignias or emblems from where they were sitting in the courtroom. (ECF No. 31-3 at 4.) Stryker notes that during *voir dire*, a potential juror admitted to knowing a member of the group, but he was dismissed by the court after admitting that his ability to be fair and impartial was affected. (ECF No. 38 at 13.) Stryker also notes that "one or two members" walked with the victim in the cafeteria during the lunch recess. (*Id.* at 13–14.)

As noted, none of this conduct shows that the members "communicated," "contacted," or "tampered" with the jury.

Consequently, the court of appeals decision was not contrary to or an unreasonable application of clearly established federal law. Absent clearly established federal law as determined by the Supreme Court addressing spectator conduct, it cannot be said that a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Musladin*, 549 U.S. at 77. Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by the petitioner, even if lower federal courts have decided the issue. *Taylor*, 529 U.S. at 381. Stryker cannot obtain habeas relief on this claim.

## II. The State Court's Decision on the Merits of Stryker's Second Claim Was Neither Contrary to nor an Unreasonable Application of Supreme Court Precedent.

Stryker's second claim is that he was denied his constitutional right to confrontation and compulsory process when the trial court excluded three prior untruthful allegations of child sexual assault made by the victim's mother and the victim. (ECF No. 1 at 8; ECF No. 38 at 21–30.) In a federal habeas proceeding errors in state law, especially those regarding the admission or exclusion of evidence, are ordinarily beyond the scope of review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A criminal defendant possesses a federal due process right to a fair trial, and state evidentiary errors will rise to the level of a federal due process violation only if they are so serious that they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhof*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)). The Sixth Amendment Compulsory Process and Confrontation Clauses, made applicable to the states through the Fourteen Amendment's Due Process Clause, guarantee a criminal defendant "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "Few rights are more fundamental than that of an accused to present witnesses in his own defense," and indeed, "this right is an essential attribute of the adversary system itself." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). The right to present evidence is not unlimited, however, and is subject to reasonable restrictions imposed by the state courts. *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("The right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.").

As previously noted, the neighborhood boy incident involved an allegation, made by the victim's mother four months before the victim's allegations against Stryker, that a male juvenile had sexually assaulted a neighborhood child. (ECF No. 31-3 at 3.) During the postconviction hearing, counsel stated "it's an interesting sort of . . . dilemma that a victim's mother who had made multiple prior false accusations, which I think and *I agree that the Court was correct in denying those* but they informed . . . his decision regarding this bus driver allegation." (*Id.* at 6 (emphasis added) (citing ECF No. 31-13 at 54–55).). Stryker refers to counsel's statement merely as an "offhand remark." (ECF No. 38 at 23.) The court of appeals, however, reasonably concluded that postconviction counsel had conceded that the trial court properly excluded evidence regarding the neighborhood boy incident. (ECF No. 31-3 at 5–6.)

As for the bus driver incident, the appellate court noted that the trial court properly applied the admissibility criteria for other-acts evidence set forth in *State v. Sullivan*, 576 N.W.2d 30 (1988). (*Id.* at 7.) Applying the appropriate state caselaw, the trial court found that the evidence was being proffered to demonstrate that the victim was making a report of sexual assault against Stryker that was incited by her mother's actions on previous occasions and to demonstrate that the victim's mother had a propensity for reporting sexual assaults. (*Id.*) The trial court found this purpose to be unacceptable and the evidence irrelevant. (*Id.*) The trial court determined, however, that the bus driver incident could become admissible during trial if facts developed that showed the victim had been prompted by her mother to make the allegation against Stryker or if there was "some suggestion that the child was . . . making the report in order to please . . . or to placate her mother or in some way to obey or do something at the suggestion of her mother." (*Id.*) The trial court also expressed concern that the matter could become a "mini trial." (*Id.*) Based on these statements, the appellate court concluded that the trial court did not erroneously exercise its discretion when it refused to admit the evidence regarding the bus drive incident. (*Id.*) The court of appeals also cited *United States v. Scheffer*, 523 U.S. 303 (1998) for its holding that "[a] defendant's right to present a defense is not unlimited and may be abridged by rules of evidence, as long as those rules are not arbitrary or disproportionate to the purposes they are designed to serve." (ECF No. 31-3 at 10 (citing *Scheffer*, 523 U.S. at 308).)

As for the victim's statements regarding her brother, the appellate court determined that the trial court properly exercised its discretion in excluding the proffered evidence because the statement about the victim's brother was inadmissible under Wisconsin's rape shield statute, Wis.

Stat. § 972.11, given that there was no basis for the jury to conclude the statement was an untruthful accusation of a sexual assault. (*Id.* at 9–10.) Therefore, the appellate court determined that the trial court applied the correct law to the facts and reached reasonable conclusions about the admissibility of Stryker's proposed evidence. (*Id.* at 5–10.)

The appellate court next determined that although Stryker was precluded from introducing this evidence, he had been provided the opportunity to present his defense, including a social worker's opinion that the victim's mother who reported the assault to CPS was "hypervigilant regarding sexual abuse." (*Id.* at 11 & n. 5) (noting that "the circuit court relied on Stryker's constitutional right to present a defense to justify the admission of that evidence"). The appellate court then concluded that the admitted evidence "allowed Stryker to argue that the circumstances of the alleged assault were implausible, the allegations lacked the substantiation of a high-quality forensic interview, and [the victim's] description of the assault had been 'tainted by her mother's influence.'" (*Id.* at 11.) The appellate court reasonably concluded that Stryker's right to present a defense was not violated. (*Id.*)

Stryker cites *Davis v. Alaska*, 415 U.S. 308 (1974), and argues his cross-examination of a prosecution witness was unreasonably limited. (ECF No. 38 at 22.) The issue in *Davis* was whether the government's interest in protecting the anonymity of a juvenile offender outweighed the defendant's right to confrontation. 415 U.S. at 309. The Supreme Court held that the defendant's Confrontation Clause rights were violated when the state court precluded him from cross-examining a key prosecution witness as to the witness's juvenile delinquency record and status as a probationer. *Id.* at 317–18. At trial, the defendant sought to show that the witness had identified the defendant to the police in order to deflect suspicion away from his own involvement in the crime, and that the witness had "acted out of fear or concern of possible jeopardy to his probation." *Id.* at 311. The witness's record would have been "revealed only as necessary to probe [the witness] for bias and prejudice and not generally to call [the witness's] good character into question." *Id.* In concluding that the limitation placed on the proffered cross-examination was unconstitutional, the Supreme Court held that any interest the state had in protecting the confidentiality of a juvenile offender's record could not require "yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320.

The circumstances of this case do not resemble *Davis*. The trial court here applied the correct law to the facts and reached reasonable conclusions about the admissibility of Stryker's

proposed evidence. And as previously noted, the state courts reasonably concluded that Stryker's right to present a defense was not violated.

This Court also concludes that even if the trial court erroneously excluded Stryker's proffered evidence, any error would be considered harmless. In habeas proceedings, a federal court determines an error is harmless unless the party seeking relief can show the error "had substantial and injurious effect or influence in determining the jury's verdict." *Tague v. Richards*, 3 F.3d 1133, 1140 (7th Cir. 1993) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). The Seventh Circuit has also held that a habeas petition is "not entitled to habeas relief based on trial error unless he can establish that it resulted in 'actual prejudice.'" *Id.* (quoting *Brecht*, 507 U.S. at 637). In other words, relief is proper only if this Court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). In light of the evidence against Stryker, the Court concludes that Stryker has not met his burden of demonstrating that the exclusion of the proffered evidence had a substantial and injurious effect or influence resulting in actual prejudice.

Stryker contends that the government's case was "weak, relying on a young accuser who only about a year and half before the alleged assault, had been forensically interviewed in another accusation, denied the alleged perpetrator did anything, but made a statement insinuating assaultive behavior by her brother." (ECF No. 38 at 29.) In this case, the jury had eyewitness testimony from the victim regarding the assault and evidence that she had consistently reported the assault first to her sister, then her mother, and later to law enforcement before her trial testimony. As noted by Respondent, the victim's testimony remained consistent on cross-examination, and she denied receiving any coaching from her mother. (ECF No. 44 at 25 (citing ECF No. 31-8 at 200–01, 205–06).) The jury also heard testimony from the victim's mother who testified that the victim "lifted up her dress and she told [her mother] that [Stryker] had put his hands on her vagina." (ECF No. 31-8 at 221.) The mother also explained on cross-examination that as a foster parent she is a "mandated reporter for any child that discloses any abuse that may or may not have happened." (*Id.* at 285.) The jury heard testimony from the victim's sister who testified that her sister told her that Stryker "put his hands down [her] pants." (*Id.* at 300.) The jury also heard testimony from the officers who interviewed the victim and her mother. Consistent with her reports to her sister and her mother, the victim told three officers that the assault happened

at Stryker's home while she was sitting on his lap watching Scooby-Doo. (ECF No. 44 at 27–28; ECF No. 31-9 at 15–16, 73, 208–09.) The Court, therefore, does not have the requisite "grave doubt" as to the verdict and any error in excluding the evidence is harmless. Accordingly, Stryker's second claim is rejected as well.

In conclusion, Stryker has not shown that the Wisconsin Court of Appeals unreasonably applied clearly established Supreme Court precedent in rejecting Stryker's claims. He has also failed to demonstrate that the state court decision involved an unreasonable determination of the facts. Accordingly, Stryker's petition for writ habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and citation omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Stryker's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, is **DENIED**, and the case is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Stryker's motion for court order permitting respondent to transfer custody of petitioner pending decision in habeas proceeding, ECF No. 45, is **DENIED as moot.**

**IT IS FURTHER ORDERED** that because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v.*

*McDaniel*, 529 U.S. 473, 483–84 (2000), a certificate of appealability is **DENIED**.  If the petitioner wishes, he may seek a certificate of appealability from the court of appeals.

Dated at Milwaukee, Wisconsin on February 3, 2025.

                                                s/ *Brett H. Ludwig*
                                                BRETT H. LUDWIG
                                                United States District Judge